ISMAIL J. RAMSEY (CABN 189820)
United States Attorney
THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division
WENDY M. GARBERS (CABN 213208)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6475
    FAX: (415) 436-7234
    wendy.garbers@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| UNITED STATES OF AMERICA, | ) No. 22-cr-00415-YGR |
|---|---|
| Plaintiff, | ) **UNITED STATES'S SENTENCING MEMO** |
| v. | ) |
| HECTOR ARTEAGA, | ) |
| Defendant. | ) |

## I.  INTRODUCTION

Hector Arteaga is recidivist drug dealer, with a history of dealing drugs in the Bay Area. The serious and repeated nature of his crimes warrants a significant sentence. The government concurs in Probation's recommendation, and recommends a 72-month sentence, which is significantly below Guidelines.

## II.  BACKGROUND

Arteaga has admitted to dealing a significant quantity of drugs in the East Bay. On February 9, 2022, Arteaga met with an individual at the Home Depot parking lot in San Leandro, CA, who, unbeknownst to Arteaga, was a confidential source. Arteaga sold this individual 425.4 grams net of methamphetamine, along with a small baggie of cocaine (approximately 60 grams gross), in exchange for $2,300. On April 8, 2022, Arteaga met with this same individual in the Food Maxx parking lot in

San Leandro, CA.  Arteaga sold him 443 grams net of methamphetamine in exchange for $1,300.  On May 25, 2022, Arteaga again met this this same individual at the 24-Hour Fitness parking lot in San Leandro, CA.  Arteaga sold him 900.3 grams net of methamphetamine in exchange for $2,600.

In order to facilitate his drug sales, Arteaga maintained a stash house located at 1749 81st Avenue, Oakland, CA.  Arteaga claims to have shared this stash house with one other individual, who was related to Arteaga's half-brother.  Agents executed a search warrant at this stash house on July 8, 2022, and found a significant quantity of drugs stored there.  There were multiple bags containing: 409.5 gross grams of suspected heroin, 571.1 gross grams of suspected cocaine, 79.6 gross grams of suspected methamphetamine, 154.4 gross grams of suspected crack cocaine, 255.6 gross grams of suspected methamphetamine, and 2863.1 gross grams of suspected methamphetamine.

The Information, filed on October 28, 2022, charges Arteaga with one count of Possession with Intent to Distribute and Distribution of 50 Grams and More of a Mixture and Substance Containing Methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B).  (ECF 20.)  On February 23, 2023, Arteaga accepted responsibility for his crimes and pled guilty.  (ECF 29.)

## III. SENTENCING GUIDELINES CALCULATIONS

The government agrees with the Sentencing Guidelines calculations set forth in the PSR:

a. **Base Offense Level, U.S.S.G. §2D1.1(c)(4):** **32**
b. **Specific offense characteristics (stash house (§2D1.1(b)(12)):** **+2**
c. **Acceptance of Responsibility §3E1.1:** **-3**
d. **Adjusted Offense Level:** **31**

(PSR at ¶¶ 23-32.)  The government also agrees that Arteaga is safety valve eligible, warranting a two-level variance, and bringing his adjusted offense level to 29.

The PSR calculates Arteaga's criminal history as category II.  (PSR at ¶ 40.)  The government agrees with this calculation as well.  As reflected in the PSR, the Guidelines range for imprisonment associated with adjusted offense level 29 and Criminal History Category II is 97-121 months.  (PSR at p. 23.)

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court must impose a sentence sufficient, but not greater than necessary, to reflect the

seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to rehabilitate the defendant. 18 U.S.C. § 3553(a)(2); *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). Section 3553(a) sets forth several factors that the Court must consider in determining a just sentence: (1) the nature and circumstances of the offense and the defendant's history and characteristics; (2) the purposes of sentencing; (3) the kinds of sentences available; (4) the Guidelines range for sentences; (5) any pertinent policy statements; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to any victims. 18 U.S.C. § 3553(a); *Carty*, 520 F.3d at 991. The Guidelines are "the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Although the Guidelines are not binding, they "reflect a rough approximation of sentences that might achieve section 3553(a)'s objectives." *Rita v. United States*, 551 U.S. 338, 350 (2007).

The Court should impose a sentence here of 72 months, which is below the suggested Guidelines range, but still significant. Arteaga is a recidivist drug dealer with a history of dealing drugs in the Bay Area that dates back to at least 2002. On September 30, 2002, Arteaga was convicted of selling crack cocaine to an undercover officer in the Tenderloin, in violation of Health and Safety Code § 11352(A), a felony. (PSR at ¶ 35.) He was sentenced to 6 months in jail and 3 years' probation. (*Id.*) Nevertheless, on March 21, 2003, Arteaga was again convicted of selling crack cocaine to an undercover officer in the Tenderloin, in violation of Health and Safety Code § 11352(A), a felony. (PSR at ¶ 36.) He was again sentenced to 6 months in jail and 3 years' probation. (*Id.*)

Although he was not convicted, in August 2012, Arteaga was observed selling suspected crack cocaine in the Tenderloin by SFPD officers and subsequently arrested. (PSR at ¶ 41.) In February 2017, Arteaga was again convicted for narcotics activity in the Tenderloin, based on conducted that occurred in April 2016. (PSR at ¶ 38.) Specifically, Arteaga was convicted of being a felony Accessory, in violation of Penal Code § 32 and sentenced to 1 day in jail and 18 months' probation. (*Id.*) In December 2021, Arteaga was arrested for possessing and distributing crack cocaine in Oakland, although the charges were dismissed for lack of sufficient evidence. (PSR at ¶ 46.)

Notwithstanding these prior interactions with the justice system, Arteaga has continued to sell drugs in the Bay Area. Arteaga's narcotics trafficking history, along with the large quantities of drugs

that he was selling here, demonstrates that a significant sentence is necessary to deter this conduct in the future.

The Ninth Circuit has held that a sentencing court acts fully within its discretion when it "consider[s] the defendant's repetition of the same or similar offenses" and bases its sentence on that circumstance. *United States v. Segura-Del Real*, 83 F.3d 275, 277 (9th Cir. 1996). Doing so is especially appropriate here. Arteaga has repeated the same illegal behavior over sustained period. A 72 month sentence is significant, yet not greater than necessary, and accounts for some of the mitigating factors identified by Probation.

Finally, the Court should impose a 5-year term of supervised release with an expanded search condition. Arteaga's history of narcotics sales proves that he poses a high risk of reoffending, and a warrantless search condition is "necessary to mitigate that risk." *See United States v. Cervantes*, 859 F.3d 1175, 1184 (9th Cir. 2017).

**V.   CONCLUSION**

For the foregoing reasons, the government recommends that the Court sentence Arteaga to 72 months in custody, 5 years supervised release, and a $100 special assessment.

DATED: July 20, 2023                                     Respectfully submitted,

                                                         ISMAIL J. RAMSEY
                                                         United States Attorney


                                                          *Wendy M. Garbers*
                                                         WENDY M. GARBERS
                                                         Assistant United States Attorney